HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
SUMMER LACEY (Bar No. 308614)
(E-Mail:Summer_Lacey@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7330
Facsimile: (213) 894-0081

Attorneys for Defendant
ERNESTO GIL-CAMACHO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    v.<br><br>ERNESTO GIL-CAMACHO,<br>      Defendant. | Case No. CR 18-152-PSG<br><br>**ERNESTO GIL-CAMACHO'S SENTENCING POSITION; EXHIBIT**<br><br>Sentencing Date:  October 1, 2018<br>Sentencing Time:  10:00 a.m. |

Defendant Ernesto Gil-Camacho, by and through his attorney of record, Deputy Federal Public Defender Summer Lacey, hereby files his Position Paper Re: Sentencing Factors, Memorandum of Points and Authorities, and attached exhibit, for this Court's consideration prior to sentencing.

                                                              Respectfully Submitted,

                                                              HILARY POTASHNER
                                                              Federal Public Defender

DATED: September 17, 2018      By  */s/ Summer Lacey*
                                                              SUMMER LACEY
                                                              Deputy Federal Public Defender
                                                              Attorney for ERNESTO GIL-CAMACHO

# I.
# INTRODUCTION

Ernesto Gil-Camacho pled guilty to one count of 8 U.S.C. § 1326, illegal reentry after deportation. Mr. Camacho has signed a "fast track" plea agreement, in which the parties have agreed to a two-level reduction in Mr. Camacho's offense level, for a total offense level of 10.

Mr. Camacho stands by his plea agreement and its recommendations regarding his offense level. He files this position paper to enable the Court to consider all of the sentencing factors under 18 U.S.C. § 3553(a). Mr. Camacho first entered the United States when he was 19 years old. He came to this country to live a safer and more prosperous life. Thus, the appeal of a life in the United States was rooted in a need to survive.

# II.
# SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

## A.  The Overarching Principle

The very first sentence of 18 U.S.C. § 3553(a) establishes the following requirement: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in subparagraph (2) of this subsection." The Supreme Court has described this as the "overarching provision" in § 3553(a). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). This statement by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key – in fact, the key – requirement that a sentence must satisfy.

In arriving at the appropriate sentence, § 3553(a) directs the court to consider: (1) the nature and circumstances of the offense, (2) the history and characteristics of the offender, (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense,

1

(4) to afford adequate deterrence, (5) to protect the public from further crimes, (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment, and (7) the kinds of sentences that are available. 18 U.S.C. § 3553(a)(1), (2). Further, by enacting § 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Finally, § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

In sum, in every case, courts must consider all of the statutory factors in arriving at the appropriate sentence.

### B. Mr. Camacho's Personal History and Characteristics (§ 3553(a)(1))

#### 1. Mr. Camacho's Childhood is Shaped by Loss and Abandonment.

Mr. Camacho was born to Mario De Jesus Torres Cerrillo and Maria Del Carmen Pimentel Lira on October 26, 1974, in Mexico City, Mexico. He is the second of the couple's three children. Life in Mr. Camacho's family home was tumultuous. Indeed, when Mr. Camacho was just seven years old, his father, Mario, moved to the United States and never had contact with the family again. As a young boy, Mr. Camacho mourned the loss of his father, while also struggling to understand his father's decision to abandon the family. Without Mario, Mr. Camacho's mother, Maria, struggled to provide for her children. After months of desperation, she made the difficult decision to send Mr. Camacho to live with her parents. Despite the fact that Mr. Camacho loved his grandparents, he was devastated by his mother's decision to send him away. He ultimately felt that he had been abandoned once again by the people who were supposed to love him the most in the world.

Mr. Camacho had a difficult time adjusting to life at his grandparents' home. He missed his mother and siblings, and could not understand why he was the one to be sent away. Sadness and loneliness consumed him. He felt isolated and discarded. In an effort to cope with his troubling emotions, Mr. Camacho began drinking alcohol when no one was watching. Specifically, Mr. Camacho would sneak sips of his grandfather's wine. He would drink until his thoughts began to drift away from the seemingly constant theme of being left by his mother. Though he was only nine years old when he began drinking, he was able to keep the destructive habit hidden from his grandparents. By the time Mr. Camacho was in high school, his drinking began to interfere with his studies. He began missing school, and eventually stopped attending.

### 2. Mr. Camacho Tries to Create a New Life for Himself in the United States, but Continues to Struggle with Alcohol Dependency.

Mr. Camacho first came to the United States when he was 19 years old. His decision to leave Mexico was based on his desire to find more promising job opportunities, so that we would be able to send money home to his mother and grandmother. Mr. Camacho initially settled in Pomona, California, and began working at an aluminum factory in the City of Industry. In just a few short months, he was able to create a life for himself in the United States. Instead of being propelled by the sense of shame that had consumed him as a child, Mr. Camacho began to feel motivated by a feeling of personal pride. Not only was he providing for himself, he was supporting his family in Mexico. Mr. Camacho eventually moved on from the aluminum factory and began working as a house painter. He has also worked as a maintenance operator at a vineyard.

Despite Mr. Camacho's professional accomplishments, he continued to abuse alcohol. He struggled to maintain a balance between his work life and his commitment to drinking. Before long, Mr. Camacho began having repeated contact with the

3

criminal justice system. Upon reflection, Mr. Camacho recognizes that his past offenses, which are mainly theft related, are a result of his struggles with alcoholism and poor decisions made in order to maintain his drinking habit.

### 3. Mr. Camacho's Bond with His Daughter and Commitment to His Family.

Mr. Camacho began a relationship with Sara Avina Hurtado in 2006. The couple met while Mr. Camacho was in Mexico. In 2007, Sara gave birth to their daughter, Yanis. Unfortunately, Sara used crack cocaine during her pregnancy and Yanis was born addicted to crack. Yanis is now 11 years old. She is learning disabled and is being raised by Mr. Camacho's mother. After Yanis' birth, Mr. Camacho began to recognize the negative affect that his alcohol dependency was having on his life. He knew that Yanis deserved a stable parent, and he wanted to do all that he could to provide her with the parental love and support that he had longed for as a child. He entered an alcohol rehabilitation center to try to overcome his addiction. Over the past 11 years, Mr. Camacho has continued to seek treatment in an effort to achieve sustained sobriety.

Despite Mr. Camacho's personal struggles, he is a devoted father. He has dedicated himself to ensuring, regardless of his own personal struggles, that Yanis has everything she needs. Indeed, following Mr. Camacho's last deportation, he was brutally attacked while trying to earn money for his family. Specifically, Mr. Camacho was robbed and shot five times. Mr. Camacho remembers that even in the midst of the physical pain that he endured during his recovery from the attack, his thoughts were focused on his desire to get back to work to provide for his loved ones. Ultimately, Mr. Camacho's desire to earn money for his family motivated the instant offense. In addition to the financial needs of his mother and daughter, Mr. Camacho was trying to provide for his older brother, who is battling AIDS.

//

In a letter to the Court, Mr. Camacho explains:

> Your Honor, I have really tried and I really want to change my life. The beautiful child that God sent to me changed my life. Ever since I arrived here in California, I have worked as a dishwasher in a restaurant in Claremont called Heroes and Legends. Slowly I found a better job, and now I work - well, I was working up until the day I was arrested in the hospital - in a plant nursery in San Dimas. I send a little money to my mother and my daughter, as well as to my brother for his medications. Your Honor, I am asking you with all my heart not to be too harsh with me. I am the only support my family has, and I have really tried to change.

Exhibit A, Letter from Ernesto Gil-Camacho.

### C. The Purposes of Sentencing (§ 3553(a)(2)): Deterrence, Just Punishment, and the Need to Provide Medical Care, Training, or Treatment

Mr. Camacho accepts full responsibility for his illegal reentry into the United States. He has pled guilty and awaits sentencing by this Court. Mr. Camacho now recognizes the serious consequences of illegal re-entry. He will not risk additional time in custody. Mr. Camacho accepts that while he has spent the majority of his life trying to be a provider, the best thing he can do for his family is to stay out of prison. Thus, Mr. Camacho will return to Mexico and begin working to support his loved ones. He will also continue to seek treatment for alcoholism.

Finally, as for promoting respect for the law and just punishment, see 18 U.S.C. § 3553(a)(2)(A), it should be noted that many believe that the harsh sentences often required by the illegal reentry guideline – which often, exceed every other sentence the defendant has received – are affirmatively *unjust*. For people from this segment of society, these harsh sentences promote disrespect as opposed to respect for the law. Cf. Gall v. United States, 128 S. Ct. at 599 (noting district judge's conclusion in case at bar

5

that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

Another view regarding the case of a person such as Mr. Camacho is that deportation alone is a horrible punishment. As Justice Douglas noted in his dissenting opinion in Harisiades v. Shaughnessy, 342 U.S. 580 (1952):

> Banishment is punishment in the practical sense. It may deprive a man and his family of all that makes life worthwhile. Those who have their roots here have an important stake in this country. Their plans for themselves and their hopes for their children all depend on the right to stay. If they are uprooted and sent to lands no longer known to them, no longer hospitable, they become displaced, homeless people condemned to bitterness and despair.

Id. at 600 (Douglas, J., dissenting). See also Barber v. Gonzales, 347 U.S. 637, 642-43 (1954) (recognizing deportation may be "the equivalent of banishment or exile" (quoting Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948)).

\*   \*   \*

Mr. Camacho's primary goal has been to support his family. He recognizes that he has made many mistakes and that the interests of justice require that he receives a custodial sentence for the offense of illegal re-entry and he stands by his plea agreement. Accordingly, he humbly requests that the Court temper its punishment with wisdom, understanding, and an acknowledgement of the aforementioned factors.

//
//
//
//
//
//

6

## IV.
## CONCLUSION

For the foregoing reasons, Mr. Camacho respectfully requests that the Court accept the plea agreement.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: September 17, 2018        By  */s/ Summer Lacey*
SUMMER LACEY
Deputy Federal Public Defender
Attorney for ERNESTO GIL-CAMACHO

7

# PROOF OF SERVICE

I, Michelle Carlos, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **ERNESTO GIL-CAMACHO'S POSITION ON SENTENCING; EXHIBITS** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[ X ] via E-mail addressed as follows:

Cristina Torres, USPO
Cristina_Torres@cacp.uscourts.gov

This proof of service is executed at Los Angeles, California, on September 17, 2018.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                 */s/ Michelle Carlos* .
                 **MICHELLE CARLOS**